199 N.J. Super. 82 (1985)
488 A.2d 557
GARY F. FOX AND GERALDINE V. FOX, PLAINTIFFS-APPELLANTS,
v.
TOWNSHIP OF PARSIPPANY-TROY-HILLS, DEFENDANT-RESPONDENT, AND D & H ENTERPRISES, CAREW CORPORATION AND TRI-COUNTY ASPHALT, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued December 4, 1984.
Decided February 4, 1985.
*84 Before Judges MICHELS, PETRELLA and BAIME.
Cynthia A. Walters argued the cause for appellants (Porzio, Bromberg & Newman, attorneys; Marc Z. Edell, of counsel, Cynthia A. Walters, on the brief).
Douglas S. Brierley argued the cause for respondent (Schenck, Price, Smith & King, attorneys; David S. Cramp, of counsel, Douglas S. Brierley, on the brief).
The opinion of the Court was delivered by MICHELS, P.J.A.D.
Plaintiffs Gary F. Fox and Geraldine V. Fox appeal from an order of the Law Division entered in favor of defendant Township of Parsippany-Troy Hills (Township) that denied their motion for a new trial. This appeal concerns the burden of proof with respect to the question of "palpably unreasonable" conduct of a public entity under the provisions of N.J.S.A. 59:4-2 of the New Jersey Tort Claims Act.
Plaintiff Gary F. Fox instituted this action against the Township, among other defendants, seeking to recover damages for personal injuries sustained as a result of a motorcycle accident which occurred on a Township road. He charged that the Township was negligent in maintaining the roadway and knowingly permitting a dangerous condition to exist. His wife sued per quod.
*85 Plaintiff, an off-duty Morris County police officer, was operating his motorcycle along a Township road. According to his testimony, he was travelling at approximately 25 miles an hour when it appeared that the on-coming traffic was travelling very close to the center line of the roadway. He moved his motorcycle towards the center lane of his portion of the roadway and observed a pothole and debris in the center of that lane. He swerved his motorcycle to avoid hitting the pothole and debris, which he described as being the size of a fist. The motorcycle went out of control, veering to the right. He attempted to gain control of the motorcycle by putting his left foot on the roadway to keep his balance and tried to brake the motorcycle with his right foot. However, he hit a very large and deep trench at the end of the roadway at or near property owned by defendant D & H Enterprises. The front wheel of the motorcycle hit the trench bringing it to a dead stop. The back end of the motorcycle was jolted upward, and plaintiff was thrown to the pavement.
Plaintiff testified that he observed debris in the roadway in the area of the accident, consisting of large chunks of gravel and torn-up asphalt. At the point where the accident occurred D & H Enterprises was building a warehouse. D & H Enterprises' site plan approval was conditioned upon its widening the roadway so that traffic would have egress and ingress from the driveway of its property. The curbing had been completed and the first layer of concrete for the widened lane had been poured. However, at the time the accident occurred, the final layer of concrete had not yet been poured. In addition, there was a drainage problem at the construction site, and at various times prior to completion of the first stage of the project water and debris had been deposited on the roadway in the area of the D & H Enterprises property.
Plaintiffs' expert testified that the pavement was defective and that it contained potholes and excessive amounts of debris. He also found that the shoulder of the roadway was unraveled and deteriorated and the surface of the pavement was irregular. *86 The expert was of the opinion generally that the widening of the roadway in the area where the accident occurred was not done properly. Specifically, he was of the opinion that, among other things, curbing should have been placed on the unraveled base at the shoulder of the roadway and that "the shoulder should have been repaired and resurfaced to allow a smooth transition of road, and the roadway needed work." He also opined that signs or barricades should have been erected to notify the travelling public that work was going to be done and to keep out of the area. The Township's superintendent of streets and roads, on the other hand, testified that there was no record of any complaints about potholes or bad edges in the area of the accident and that his inspections had failed to reveal any such condition.
At the conclusion of the proofs, the trial court instructed the jury that plaintiffs had the burden of proving each essential element of the cause of action, including whether the Township's conduct was palpably unreasonable. The jury, in response to specific interrogatories, found that (1) the accident occurred in the area of the roadway at or near the driveway of the D & H Enterprises property, (2) the condition of the roadway constituted a dangerous condition, (3) the Township had either actual or constructive notice of the condition, (4) the condition of the roadway was a substantial contributing cause of the accident, but (5) the Township's action or inaction in response to the condition was not palpably unreasonable. The trial court thereupon molded a verdict of no cause for action and entered judgment in favor of the Township. Plaintiffs moved for a new trial, contending solely that the trial court erred by placing upon them the burden of proof with respect to the issue of the alleged "palpable unreasonableness" of the Township's conduct. The trial court disagreed and denied the motion. This appeal follows.
Plaintiffs now contend that not only did the trial court err by placing upon them the burden of proving that the Township's conduct was "palpably unreasonable" under N.J.S.A. 59:4-2, *87 but that "in the absence of an affirmative defense based on allocation of resources the jury should not have been instructed to decide the issue at all." We are convinced that plaintiffs are wrong in both respects and affirm the denial of the motion for a new trial.
Tort claims against public entities, such as the Township, are governed by the provisions of the Tort Claims Act. The Tort Claims Act reestablishes an all-inclusive immunity from tort liability for public entities absent specific provisions therein imposing liability upon them. Rodriguez v. N.J. Sports & Exposition Authority, 193 N.J. Super. 39, 42 (App.Div. 1983), certif. den. 96 N.J. 291 (1984); Coppola v. State, 177 N.J. Super. 37, 39 (App.Div. 1981), certif. den. 87 N.J. 398 (1981); Burg v. State, 147 N.J. Super. 316, 320 (App.Div. 1977), certif. den. 75 N.J. 11 (1977); English v. Newark Housing Authority, 138 N.J. Super. 425, 428-429 (App.Div. 1976). The legislative policy underlying the Tort Claims Act is set forth in N.J.S.A. 59:1-2, which states:
The Legislature recognizes the inherently unfair and inequitable results which occur in the strict application of the traditional doctrine of sovereign immunity. On the other hand the Legislature recognizes that while a private entrepreneur may readily be held liable for negligence within the chosen ambit of his activity, the area within which government has the power to act for the public good is almost without limit and therefore government should not have the duty to do everything that might be done. Consequently, it is hereby declared to be the public policy of this State that public entities shall only be liable for their negligence within the limitations of this act and in accordance with the fair and uniform principles established herein. All of the provisions of this act should be construed with a view to carry out the above legislative declaration. [Emphasis supplied].
In furtherance of this stated policy, N.J.S.A. 59:2-1 provides in pertinent part, that:
a. Except as otherwise provided by this act, a public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person.
The necessary elements that must exist to hold a public entity liable for the dangerous condition of its roadways are specifically set forth in N.J.S.A. 59:4-2 as follows:
A public entity is liable for injury caused by a condition of its property if the plaintiff establishes that the property was in dangerous condition at the time of *88 the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:
a. a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or
b. a public entity had actual or constructive notice of the dangerous condition under section 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.
Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable.
Thus, liability cannot be visited upon the Township under N.J.S.A. 59:4-2 unless the proofs show that (1) the roadway was in a dangerous condition at the time of the accident, (2) there was proximate cause between the injury and the dangerous condition, (3) the dangerous condition created a reasonably foreseeable risk of the kind of injury that had occurred, (4) the Township had notice and sufficient time to protect against the condition, and (5) the action the Township took to protect against the condition or the failure to take such action was palpably unreasonable. See Brown v. Brown, 86 N.J. 565, 575 (1981); Speaks v. Jersey City Housing Auth., 193 N.J. Super. 405, 409-410 (App.Div. 1984), certif. den. 97 N.J. 655 (1984).
Plaintiffs claim, however, that in the absence of an affirmative defense based on allocation of resources, the jury should not have been instructed to decide whether the Township's conduct was palpably unreasonable. In other words, they claim that the last paragraph of N.J.S.A. 59:4-2 is not applicable unless an affirmative defense of allocation of resource immunity is raised by the public entity under N.J.S.A. 59:3-2(d). Plaintiffs are clearly wrong. The requirement that the Township's conduct be "palpably unreasonable" if it is to be held liable for injury caused by a condition of its property under N.J.S.A. 59:4-2 is imposed by the clear, precise and unambiguous language of the statute itself. It is an essential and necessary element of the statutory cause of action under N.J.S.A. 59:4-2 and exists without regard to whether the Township has pleaded "a defense based on allocation of resources."
*89 Consequently, we hold to the view that on this record the trial court properly submitted to the jury the issue of whether the Township's failure to take collective measures to protect the travelling public from a dangerous condition on one of its public roadways was palpably unreasonable under N.J.S.A. 59:4-2. See Brown v. Brown, supra, 86 N.J. at 580; Shuttleworth v. Conti Constr. Co., Inc., 193 N.J. Super. 469, 474 (App.Div. 1984); Paternoster v. N.J. Transp. Dept., 190 N.J. Super. 11, 20 (App.Div. 1983), certif. den. 96 N.J. 258 (1983).
Beyond this, since plaintiffs specifically requested that the jury be instructed as to whether the Township's "failure to take action to repair, remedy or correct the condition, or to provide safeguards against it or to warn of the condition was palpably unreasonable," they cannot claim now that the instructions constituted prejudicial error.[1] "Elementary justice in reviewing the action of a trial court requires that that court should not be reversed for an error committed at the instance of a party alleging it ..." Bahrey v. Poniatishin, 95 N.J.L. 128, 133 (1920). In this regard, we repeat what our Supreme Court so appropriately observed in State v. Pontery, 19 N.J. 457 (1955):
The defendant cannot beseech and request the trial court to take a certain course of action, and upon adoption by the court, take his chance on the outcome of the trial, and if unfavorable, then condemn the very procedure he sought and urged, claiming it to be error and prejudicial. [at 471].
See also State v. Simon, 79 N.J. 191, 205 (1979); Titus v. Lindberg, 49 N.J. 66, 78 (1967); State v. McNeil, 164 N.J. Super. 27, 33 (App.Div. 1978), certif. den. 79 N.J. 497 (1979); Gilborges v. Wallace, 153 N.J. Super. 121, 139 (App.Div. 1977), rev'd in part on other grounds, 78 N.J. 342 (1978); State v. Harper, 128 N.J. Super. 270, 277 (1974), certif. den. 65 N.J. 574 *90 (1974); Venuto v. Lubik Oldsmobile, Inc., 70 N.J. Super. 221, 229 (App.Div. 1961); Schult v. H. & C. Realty Corp., 53 N.J. Super. 128, 136 (App.Div. 1958), certif. den. 29 N.J. 279 (1959).
We are also satisfied that the trial court properly placed the burden of proof upon plaintiffs with respect to the issue of the "palpable unreasonableness" of the Township's conduct under N.J.S.A. 59:4-2. See Speaks v. Jersey City Housing Auth., supra, 193 N.J. Super. at 409-410. Plaintiffs' argument to the contrary is based largely upon the Supreme Court's opinion in Brown v. Brown, supra, that the "palpably unreasonable" standard set forth in N.J.S.A. 59:4-2 "refers to the public entities' discretion in determining what action should or should not have been taken." According to the Supreme Court, "[t]his requirement in N.J.S.A. 59:4-2 should be read in conjunction with N.J.S.A. 59:2-3(d)." Brown, supra, 86 N.J. at 575. With regard to the immunity afforded by N.J.S.A. 59:2-3(d), the Supreme Court held that the public entity bears the burden of demonstrating resource allocation immunity. Thus, there can be no question but that the public entity has the burden of proving discretionary allocation of resource immunity where such is raised as a separate defense. See Birchwood Lake Colony Club v. Medford Lake, 90 N.J. 582, 602 (1982); Brown v. Brown, supra, 86 N.J. at 578-579 (1981); Longo v. Santoro, 195 N.J. Super. 507, 518 (App.Div. 1984).
However, the problem of governmental resource allocation does not exist in every case involving a public entity and it did not exist here. The Township did not raise an allocation of resource defense in the pleadings and the case was not tried on such a theory. As noted by the Supreme Court in Brown v. Brown, supra, the phrase "palpably unreasonable" appears in N.J.S.A. 59:4-2 as well as N.J.S.A. 59:2-3(d). In the former provision "it relates to the action taken or omitted by the public entity." Thus, "if that action or inaction were not palpably unreasonable the plaintiff would be barred from recovery." As to the latter provision, the "public entity is immune from liability resulting from its exercise of discretion with respect to *91 competing demands if its exercise of that discretion has not been palpably unreasonable." The Supreme Court importantly noted that "these two subsections may under some circumstances involve the same issue." However, nowhere does the Supreme Court hold that in actions under N.J.S.A. 59:4-2, where the allocation of resource immunity defense is not raised, the burden of proof is on the public entity. In sum, we read Brown v. Brown, supra, as requiring that the burden of proof be placed on the public entity only where the resource allocation immunity afforded by N.J.S.A. 59:2-3(d) is raised as an affirmative defense. Otherwise, the burden of proving that the public entity's conduct was palpably unreasonable is on the plaintiff. See Speaks v. Jersey City Housing Auth., supra; Guerriero v. Palmer, 175 N.J. Super. 1, 6 (Law Div. 1979). This is consistent with the underlying philosophy of the Tort Claims Act to impose a more onerous burden on the plaintiff when seeking to hold a public entity liable for injury caused by a condition of public property. See Williams v. Phillipsburg, 171 N.J. Super. 278, 286 (App.Div. 1979).
Accordingly, the order under review is affirmed.
NOTES
[1] Plaintiffs' request to charge and the jury charge are almost identical to the Model Jury Charges concerning "Dangerous Conditions of Public Property." New Jersey State Bar Association, Model Jury Charges  Civil and Criminal, § 5.09P (1980).