740 A.2d 686 (1999)
326 N.J. Super. 102
Ruth M. LEIBIG, and The Estate of Ruth M. Leibig, and Barbara Marlowe, Executor, Plaintiff-Appellant,
v.
SOMERVILLE SENIOR CITIZENS HOUSING, INC., Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted November 3, 1999.
Decided November 24, 1999.
*687 James F. Villere, Jr., Morristown, for plaintiff-appellant Estate of Ruth Leibig.
Bivona, Cohen, Kunzman, Coley, Yospin, Bernstein & DiFrancesco, for defendant-respondent (Stephen O. Davis and Ruth M. Meyer, Warren, on the brief).
Before Judges PRESSLER, LANDAU and CIANCIA.
The opinion of the court was delivered by CIANCIA, J.A.D.
Ruth M. Leibig, a seventy-eight year old woman who was active and self-sufficient, lived by herself in an apartment building owned and operated by defendant Somerville Senior Citizens Housing, Inc. Ms. Leibig had lived in the apartment complex since 1985. On May 16, 1994, she was discovered in her bathtub with her arm wedged between the bathroom wall and a grab bar mounted on the wall. She was conscious and told her rescuer that she had been stuck in the bathroom for three days. Her arm was swollen and a subsequent medical exam diagnosed "gangrene secondary to compression of artery." Ms. Leibig went into a coma and died two days after she had been found in her bathroom. The cause of death was described as septicemia as a consequence of gangrene.
A complaint was filed on behalf of decedent and her estate (plaintiff) alleging in relevant part negligent design, construction, and installation of the grab bar and negligent supervision of Ms. Leibig by defendant. A wrongful death count was also brought but was subsequently dismissed on defendant's motion for summary judgment. That dismissal is not challenged in this appeal.
Defendant's answer set forth eighteen separate defenses including immunity under the Tort Claims Act. N.J.S.A. 59:1-1 et seq. Defendant moved for summary judgment, and plaintiff cross-moved for judgment "on a product liability theory." The motion judge subsequently found that defendant was entitled to derivative immunity pursuant to the Tort Claims Act and dismissed the complaint. Plaintiff's cross-motion was denied, as was a subsequent motion for reconsideration. We now reverse the grant of summary judgment in favor of defendant, affirm the denial of plaintiff's cross-motion, and reinstate plaintiff's complaint.
Initially we note that our review of this appeal was hampered by the attorneys' failure to set forth fact statements supported by references to the appendix and transcript as required by R. 2:6-2(a)(4). Indeed in numerous instances we were unable to find supporting documentation *688 for the asserted facts. That being said, we are able to discern the following.
The heart of plaintiff's theory of liability was that the bathroom grab bar, as installed, left too much space between the bar and the wall, thereby creating a risk of harm such as that visited upon decedent. In response, defendant claimed immunity from suit based on N.J.S.A. 59:4-6 which provides:
Neither the public entity nor a public employee is liable under this chapter for an injury caused by the plan or design of public property, either in its original construction or any improvement thereto, where such plan or design has been approved in advance of the construction or improvement by the Legislature or the governing body of a public entity or some other body or a public employee exercising discretionary authority to give such approval or where such plan or design is prepared in conformity with standards previously so approved.
Defendant, a nonprofit housing sponsor and not a public entity itself, claimed it was entitled to derivative immunity. Its theory was that when the housing complex was built in 1977 it was funded by the New Jersey Housing Mortgage Finance Agency (HMFA), and that entity controlled the design and construction of the building. Assertedly the grab bars were part of the plans and had been installed as part of the original construction in all units in the same manner. Defendant characterizes itself as an independent contractor that had no choice but to follow the design dictates of the HMFA.
The trial judge, in granting defendant's motion for summary judgment, essentially adopted defendant's theory of immunity, although he did not specify which provision of the Tort Claims Act was operative. We assume it was N.J.S.A. 59:4-6 because on the facts presented and in light of the arguments advanced, it could be no other.
Putting aside for the moment the question of whether an entity such as defendant is entitled to derivative immunity, the basic elements of plan-or-design immunity under N.J.S.A. 59:4-6, on the facts here presented, are a public entity, public property, and a plan or design approved in advance of construction by the public entity. We are satisfied these elements have not been sufficiently demonstrated to permit a finding of "primary" immunity, the necessary predicate to derivative immunity.
Initially we note what is probably the least of our concerns. Throughout the proceedings at the trial level, everyone referred to the New Jersey Housing Mortgage Finance Agency as the public entity entitled to plan-or-design immunity in the first instance. On appeal defendant cites us to a Federal District Court opinion for the proposition that the HMFA meets the definition of public entity as that term is used in the Tort Claims Act. Our small problem is that the HMFA did not exist when this housing complex was constructed in 1977. The HMFA did not come into existence until 1984. N.J.S.A. 55:14K-1. The predecessor agencies that were joined to form the HMFA were the Housing Finance Agency (HFA) and the Mortgage Finance Agency (MFA). The HFA was concerned with multiple-unit dwellings and the MFA with single-family residences. Statement of the Senate State Government, Federal and Interstate Relations and Veterans Affairs Committee, Assembly No. 3463L. 1983, c. 530. We assume it was the HFA that defendant contends funded, planned, and designed the housing complex. We are presented with no information concerning the nature of the HFA, and we have found no case discussing whether the HFA was a public entity for purposes of the Tort Claims Act. Certainly "public entity" has been given a broad and inclusive interpretation by our courts. S.E.W. Friel Co. v. New Jersey Turnpike Authority, 73 N.J. 107, 113-18, 373 A.2d 364 (1977). Yet not every governmental entity is a public entity. See, e.g., Jackson v. Consolidated Rail Corp., 223 N.J.Super. 467, 483-84 n. 3, 538 A.2d 1310 (App. *689 Div.1988). Even were we willing to assume that appropriate proofs would demonstrate that the HFA was a public entity within the terms of the Tort Claims Act, we are not willing to make such an assumption on no proofs at all.
Our next concern focuses on the nature of defendant's building. The statutory plan-or-design immunity applies only to "public property." Defendant was the recipient of public funding to assist in the construction of its building, but that building is privately owned and operated, albeit by a nonprofit corporation, the defendant. It is not public housing as that term is commonly understood. Beyond this, the record provides very little information to advance an analysis of whether this housing complex for senior citizens is "public property." The motion judge made no such determination. On the record presented, no such determination was possible. Indeed only a contrary finding was available because defendant failed to demonstrate the "public property" nature of its building.
To establish immunity under N.J.S.A. 59:4-6, it is also necessary to show that the design feature in question was contained in the construction plans, those plans were approved by the public entity, and the construction was undertaken in accordance with the plans. See generally Manna v. State, 129 N.J. 341, 354, 609 A.2d 757 (1992); Ellison v. Housing Auth. of City of South Amboy, 162 N.J.Super. 347, 351, 392 A.2d 1229 (App.Div. 1978).
Here again, defendant's proofs are fatally deficient. We are not provided with the design or construction plans that specify the grab bar, and it is not clear if they were before the court on motion. Aside from general statements that all aspects of defendant's building were designed and approved by the "HFMA," there is no competent proof the grab bar or bathroom safety features were specifically considered and approved. Interestingly, it appears both sides agree that the bar specified in the original plans was not the bar installed during construction. The bar in the original plans had significantly less space between it and the wall than did the bar actually installed. (At the time this building was constructed, there was apparently no building code specification applicable to grab bars.) There is no proof the public entity approved this change. Absent such approval, there can be no claim to plan-or-design immunity.
We return briefly to the question initially put aside. If all other elements of plan-or-design immunity had been present, would defendant have qualified for derivative immunity as a public contractor? On the present record, we are unable to engage in the analysis necessary to answer that question. Defendant was not a contractor hired to build the apartment complex. Cf. Cobb v. Waddington, 154 N.J.Super. 11, 18, 380 A.2d 1145 (App.Div. 1977), certif. denied, 76 N.J. 235, 386 A.2d 859 (1978) and Rodriguez v. New Jersey Sports and Exposition Auth., 193 N.J.Super. 39, 45, 472 A.2d 146 (App.Div. 1983), certif. denied, 96 N.J. 291, 475 A.2d 586 (1984). At best it was the owner and operator of a building that may have been designed and constructed under the auspices of a public entity. While we do not preclude derivative immunity to defendant based on its status, we cannot on the present record conclude that its relationship with the HFA entitled it to such immunity. Whatever plans, contracts, and other documents forged that relationship, they are not before us. See Berends v. City of Atlantic City, 263 N.J.Super. 66, 82, 621 A.2d 972 (App.Div.1993) (a private company managing a municipal airport was not entitled to derivative immunity because the record was too sparse to allow a proper analysis). Moreover, in light of defendant's failure to prove the basic elements of plan-or-design immunity, we need not reach the question of whether it stands in the shoes of a public contractor.
*690 As the Supreme Court said in Vanchieri v. New Jersey Sports and Exposition Auth., 104 N.J. 80, 87, 514 A.2d 1323 (1986): "Moreover, public contractors' derivative immunity under the Tort Claims Act is an affirmative defense. A party seeking this immunity bears not only the burden of pleading it but also the burden of persuasion .... [citations omitted]" Defendant has not met its evidential burden, and summary judgment in its favor must be reversed.
The motion judge also denied plaintiff's claim of "strict liability." We agree with the motion judge that on the facts here presented strict liability is not a viable cause of action. Anderson v. Sammy Redd and Assoc., 278 N.J.Super. 50, 54, 650 A.2d 376 (App.Div.1994), certif. denied, 139 N.J. 441, 655 A.2d 444 (1995); Dwyer v. Skyline Apartments Inc., 123 N.J.Super. 48, 52, 301 A.2d 463 (App.Div.), aff'd o.b., 63 N.J. 577, 311 A.2d 1 (1973).
Plaintiff, however, in addition to its strict liability theory, has also advanced theories of negligence which were not addressed in the motion and cross-motion for summary judgment.
The summary judgment in favor of defendant is reversed. The dismissal of plaintiff's strict liability claim is affirmed. Plaintiff's complaint is reinstated as modified by the dismissal of its strict liability claim. The matter is remanded to the trial court for further proceedings. We do not retain jurisdiction.