**Lucy MAY, Plaintiff,**

v.

**ATLANTIC CITY HILTON, GNOC Corp., GNAC Corp., City of Atlantic City, and Does A–Z, Defendants.**

**No. CIV.A. 99–725(SSB).**

United States District Court,
D. New Jersey.

Nov. 9, 2000.

John R. Altieri, Hackensack, NJ, Attorney for Plaintiff.

Matthew B. Wieliczko, Zeller & Bryant, LLP, Cherry Hill, NJ, Attorney for Defendant City of Atlantic City.

Alan J. Cohen, Sills Cummis Radin Tischman Epstein & Gross, Atlantic City, NJ, Attorney for Defendants GNOC t/a Atlantic City Hilton.

### OPINION ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

BROTMAN, District Judge.

## I. *INTRODUCTION*

Presently before the court are the motions of all defendants for summary judgment. For the reasons stated below, the motion of defendants Atlantic City Hilton and GNOC Corp. will be granted, and defendant City of Atlantic City's motion will be denied.

## II. *FACTUAL AND PROCEDURAL BACKGROUND*

This case arises out of a fall sustained by the plaintiff, Lucy May, as she attempted to cross a street outside the Atlantic City Hilton on October 14, 1997. May, a resident of Woodside, New York, had arrived in Atlantic City on a bus tour and alighted about 10:30 a.m. at the Hilton casino hotel's transportation center. When she arrived, the escalator to the casino was not operating, and a crowd had formed at the elevator. Acting on the advice of a Hilton employee, May decided to cross Pacific Avenue on foot and access the hotel through one of its main entrances. She walked to the corner of Boston and Pacific avenues and waited for the light to turn green in her favor. When the light turned green, she stepped off the curb area with her right foot into the street gutter area, lost her balance, and fell. She suffered a fractured shoulder and also complains of pain in her back, neck and jaw.

May was unable to specify the cause of the accident or the exact location of her feet when she fell. In her deposition testimony, she could state only that:

> What I remember is putting my foot down and I was down, that the curb— like when I went to put the other foot, there was no curb. In other words, it's slanted, I guess. . . . My foot came down, the next thing I know I'm in the street, in the gutter.

(Wieliczko Certif. Ex. D at 46–48.) Nevertheless, plaintiff's expert, consulting engineer George Widas, concluded that her fall was caused by a built-up, handicap-access ramp. The ramp, which was designed and built by Atlantic City in the early 1980s, occupies the gutter area and extends from the top of the curb down to street level for the entire 10–foot radius of the corner. The face of the ramp slopes down to the street, and the ramp's end-points slope down to the gutter. Widas determined that "the excessive slopes of the subject curb ramp created the hazard for misstepping, . . . and the unsafe and dangerous condition for injury." (Altieri Certif. Ex. D at 27.) At the time of May's fall, the weather was clear and she was wearing rubber-soled shoes without heels.

On February 16, 1999, plaintiff filed suit against Atlantic City Hilton, its corporate parent, GNOC Corp., and the City of Atlantic City, alleging that the handicap ramp constituted a dangerous condition over which the defendants exercised control. Plaintiff claims damages for medical expenses, work missed between the date of the accident and March 9, 1998, and a loss of range of motion that has limited her life activities. On June 9, 2000, both Hilton

and Atlantic City moved for summary judgment. In compliance with Local Rule 7.1 Appendix N, opposing briefs, certifications and statements of material facts were submitted the same day. Accordingly, defendants' motions are ripe for consideration.

## III. SUMMARY JUDGMENT STANDARD

The standard for granting a motion for summary judgment is a stringent one, but it is not insurmountable. Fed.R.Civ.P. 56 provides that summary judgment may be granted only when materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Serbin v. Bora Corp.*, 96 F.3d 66, 69 n. 2 (3d Cir.1996). In deciding whether there is a disputed issue of material fact, the court must grant all reasonable inferences from the evidence to the non-moving party. The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

Supreme Court decisions mandate that a summary judgment motion must be granted unless the party opposing the motion "provides evidence 'such that a reasonable jury could return a verdict for the nonmoving party.'" *Lawrence v. National Westminster Bank New Jersey*, 98 F.3d 61, 65 (3d Cir.1996) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510). Once the moving party has carried its burden of establishing the absence of a genuine issue of material fact, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The non-moving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Serbin*, 96 F.3d at 69 n. 2 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)); *see also Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir.1991) (declaring that non-movant may not "rest upon mere allegations, general denials, or ... vague statements"). Thus, if the non-movant's evidence is merely "colorable" or is "not significantly probative," the court may grant summary judgment. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511.

## IV. DISCUSSION

### A. Proximate Cause

■ Both defendants argue that plaintiff has not made the requisite showing that the handicap ramp proximately caused her accident. Since plaintiff cannot pinpoint the location or source of her fall, they argue, her expert's conclusion as to the cause of her fall amounts to a speculative "net opinion" that should be disregarded by the Court.

■ The net opinion rule is that an expert's bare conclusions, unsupported by factual evidence, are inadmissible. *See Buckelew v. Grossbard*, 87 N.J. 512, 524, 435 A.2d 1150, 1156 (1981). The rule frequently focuses on the failure of the expert to explain a causal connection between the act complained of and the injury allegedly resulting therefrom. *See Stanley Co. of America v. Hercules Powder Co.*, 16 N.J. 295, 309, 108 A.2d 616 (1954). "Such an opinion ... [is] of no assistance to the trier of fact" and is insufficient to establish causation. *Tannock v. New Jersey Bell*, 223 N.J.Super. 1, 7, 537 A.2d 1307, 1309 (App. Div.1988); *see also Parker v. Goldstein*, 78 N.J.Super. 472, 189 A.2d 441, 447 (App. Div.1963).

■ An expert's opinion need not be grounded in direct evidence, however. Circumstantial evidence, defined as "a preponderance of probabilities according to

the common experience of mankind," *Bornstein v. Metropolitan Bottling Co.*, 26 N.J. 263, 274–75, 139 A.2d 404, 411 (1958), may also serve as the basis for conclusions as to causation. *See Fedorczyk v. Caribbean Cruise Lines, Ltd.*, 82 F.3d 69, 74 (3d Cir.1996). The circumstances must be strong enough "that a jury might properly, on the grounds of probability rather than certainty, exclude the inferences favorable to the defendant." *Id.* (quoting *Jackson v. Delaware, L. & W. RR. Co.*, 111 N.J.L. 487, 491, 34 N.J. 475, 170 A.2d 22, 24 (1933)); *see also Kulas v. Public Serv. Elec. & Gas Co.*, 41 N.J. 311, 318, 196 A.2d 769, 773 (1964) ("[Causation] may rest upon legitimate inference, so long as the proof will justify a . . . logical inference as distinguished from mere speculation.").

In this case, the Court finds that the conclusion of plaintiff's expert, George Widas, rests upon a logical inference from the circumstances and therefore constitutes more than a mere net opinion. The parties do not appear to seriously dispute that plaintiff was standing at the corner of Boston and Pacific avenues, within the path she would take to use the crosswalk, immediately prior to her accident. Nor do they appear to dispute that she fell upon making her first step from that corner. Widas's own observation showed that the handicap ramp extended for the entire radius of the corner. (Altieri Certif. Ex. D at 10.) Moreover, Widas observed that the ramp sloped downward along its entire length and that the run of that slope—in other words, the width of the ramp—was 30 inches. *Id.* On the basis of these observations, as well as the information that the plaintiff was standing at the corner and that her first step resulted in her fall, Widas could logically infer that plaintiff fell by stepping on the handicap ramp. In his deposition testimony, Widas refers to all these circumstances as the basis for his opinion as to the cause of the fall:

> Q. In paragraph two [of the report] you conclude that the subject event occurred when Lucy May stepped onto the subject built-up curb ramp. What's the factual source for that conclusion?
>
> A. Her description of the event, the manner of her fall, the physical characteristics at the location, incorporating the physical characteristics with human capabilities. It's a 30-inch step off the curb to miss the ramp if you're in the crosswalk. All of those things add up to that conclusion, including where she came from, where she was going. In other words, those would produce an intended route and a path of travel for her that would place her at the understood or concluded location of the event.

(Altieri Certif. Ex. D. at 76–77.) Had the ramp been narrower, or had the ramp not extended for the full radius of the curb, it would have been speculation for Widas to say that May stepped on the ramp. She could just as easily have stepped over the ramp or stepped off the curb to the side of the ramp. The circumstances at hand, however, establish a "preponderance of probabilities," *Bornstein*, 26 N.J. at 274–75, 139 A.2d 404, that plaintiff fell when she stepped on the ramp. Accordingly, plaintiff has presented evidence of causation sufficient to survive summary judgment.

**B. Duty**

█ Atlantic City Hilton next contends that the hotel owed no duty to plaintiff because the alleged dangerous condition arose not in the sidewalk but in the gutter area of the street. Assessment of this argument requires the court to trace the development in New Jersey of liability on the part of landowners for injuries occurring in the public right-of-way.

The historical rule was that an adjoining landowner was not liable for injuries suffered by a pedestrian on an abutting defective or dilapidated sidewalk. *See, e.g., Moskowitz v. Herman*, 16 N.J. 223, 225, 108 A.2d 426, 427 (1954). In *Stewart v.*

*104 Wallace Street, Inc.,* 87 N.J. 146, 432 A.2d 881 (1981), however, the Supreme Court of New Jersey carved out a limited exception to the common law rule. The Court held that commercial property owners could be found liable for negligent failure to maintain sidewalks abutting their property. *See id.* at 150, 432 A.2d at 884. Underpinning the *Stewart* Court's decision was a recognition that sidewalks provide substantial benefits to commercial property owners, such as ease of ingress and egress from their establishments and an unobstructed view of the premises. *See id.* Extending the analysis of *Stewart,* the Appellate Division has reasoned that commercial landowners could also be liable for curbs that "are structurally an integral part of ... sidewalks." *Levin v. Devoe,* 221 N.J.Super. 61, 64, 533 A.2d 977, 979 (App.Div.1987). In *Devoe,* the court ruled that a curb separated from the sidewalk by a grass strip was not an integral part of the sidewalk, but rather a feature of the road. *See id.* at 65, 533 A.2d at 979. The court observed that "[a]lthough such a curb is sometimes used by pedestrians to cross the street, like a road it is a significantly less immediate means of pedestrian ingress and egress to the abutting property than is a sidewalk." *Id.* As the court recognized in *Norris v. Borough of Leonia,* 160 N.J. 427, 734 A.2d 762 (1999), "whether a curb is deemed part of a sidewalk ... might well depend on the context and facts in the given case." *Id.* at 443–44; 734 A.2d at 771.

Atlantic City Hilton argues that the handicap ramp in this case, like the curb in *Devoe,* is not an integral part of the sidewalk; rather, because the ramp lies in the gutter area, it is a feature of the road. On this point, the Court disagrees. The fact that the ramp is adjacent to the curb rather than in the curb is not dispositive. Courts following *Stewart* have looked to the purpose of the feature. *See Norris,* 160 N.J. at 443–44, 734 A.2d at 771; *MacGrath v. Levin Properties,* 256 N.J.Super. 247, 252–53, 606 A.2d 1108, 1111 (1992); *Devoe,* 221 N.J.Super. at 64, 533

A.2d at 979. In this case the ramp, like a sidewalk, is used by pedestrians to move from the street to the hotel and has nothing to do with roadway functions such as channeling cars and water.

■ Nevertheless, the Court does not believe that the sidewalk liability of *Stewart* can properly be applied in the case of an allegedly defective handicap ramp. The facts of *Stewart* involved a deteriorating sidewalk, and the opinion also focused on poor maintenance as a source of liability: "Until today, our courts have not extended the liability of owners of abutting property ... to include injuries to pedestrians caused by the evident and dangerous deterioration or dilapidation of sidewalks because of neglect." *Stewart,* 87 N.J. at 153, 432 A.2d at 885. Similarly, the cases applying *Stewart* have almost exclusively involved allegations of negligent maintenance. *See, e.g., Norris,* 160 N.J. at 427, 734 A.2d at 762 (crumbling curb); *Brown v. St. Venantius Sch.,* 111 N.J. 325, 544 A.2d 842 (1988) (snow and ice on sidewalk); *Cogliati v. Ecco High Frequency Corp.,* 92 N.J. 402, 456 A.2d 524 (1983) (cracked sidewalk); *Straus v. Borough of Chatham,* 316 N.J.Super. 26, 719 A.2d 664 (App.Div.1998) (sidewalk cracked by tree root); *Devoe,* 221 N.J.Super. at 61, 533 A.2d at 977 (curb in disrepair). By contrast, plaintiff's claim in this case is not negligent maintenance but a design defect. Even were the Court to conclude that Atlantic City Hilton may be held liable for negligent maintenance of the ramp, it is another matter altogether to conclude that the hotel can be held liable for a design defect it did not create. Because *Stewart* is inapposite, determining whether to impose a duty in this case requires a resort to general tort principles.

■ Ultimately, the imposition of a duty of care derives from considerations of fairness and public policy. *See Hopkins v. Fox & Lazo Realtors,* 132 N.J. 426, 439, 625 A.2d 1110 (1993). Further, in determining the existence of a duty, a court

must analyze and weigh factors such as the foreseeability and severity of the underlying risk of harm, the comparative interests and relationships of the parties, and the societal interest in the proposed solution. *See Portee v. Jaffee*, 84 N.J. 88, 101, 417 A.2d 521 (1980). In this case, the crucial fact underlying analysis of all these factors is that Atlantic City, not the Hilton, designed and constructed the allegedly defective ramp. "Foreseeability" betokens "[t]he ability to see or know in advance . . . the reasonable anticipation that harm or injury is a likely result from certain acts or omissions." Black's Law Dictionary 649 (6th ed.1990). The act or omission here is the creation of the defect, and only the ramp's creator, Atlantic City, would have been in a position to anticipate a risk of injury. The interests and relationships of the parties also suggest that the hotel should not have a duty here. The city has expertise, personnel, and a process in place to avoid or cure such defects. In contrast, the Hilton would need to bring in expertise and personnel. It would also likely need to consult the city to secure the necessary permits for construction and ensure that it was following the relevant standards and regulations for constructing handicap ramps. From a public policy perspective, preventing defects is preferable—in terms of reducing both injuries and expenses—to curing them. Placing a duty on a party that can only the fix the defect—here, the hotel—may provide the wrong incentives to the party that can avoid the defect altogether. Finally, concerns of fairness dictate that no duty be imposed here. The just and equitable result is to place the burden of remedying the defect on the party that created it.

In light of these considerations, this Court finds that Atlantic City Hilton had no duty to plaintiff with respect to a design defect in the handicap ramp. Hilton's motion for summary judgment will be granted.

## C. Governmental Immunity

Plaintiff's claims against Atlantic City are governed by the New Jersey Tort Claims Act, N.J.S.A. 59:1, which sets forth the conditions under which public entities may be held liable for acts of public employees or injuries occurring on public property. Atlantic City argues that even if the ramp was the proximate cause of the accident and the city had a duty to construct and maintain the ramp in a safe condition, the city is immune from liability for plaintiff's injuries under the general immunity, plan-or-design immunity, and injury threshold provisions of the Act.

### 1. *General Immunity*

■ A public entity is immune from suit for a condition on its property unless a plaintiff can show that (1) the property was in a dangerous condition at the time of the injury; (2) the injury was proximately caused by the dangerous condition; (3) the dangerous condition created a reasonably foreseeable risk of the kind of injury that occurred; and (4) either an employee of the entity created the condition or the entity had notice of the condition a sufficient time prior to the injury to have taken protective measures. *See* N.J.S.A. 59:4–2. Additionally, recovery is barred unless the action or inaction on the part of the public entity in protecting against the condition was "palpably unreasonable." *Id.* Atlantic City contends that May has not provided evidence of palpable unreasonableness sufficient to withstand summary judgment.

■ Palpable unreasonableness connotes a "more obvious and manifest breach of duty" than mere negligence. *Williams v. Phillipsburg*, 171 N.J.Super. 278, 286, 408 A.2d 827 (App.Div.1979). The term "implies behavior that is patently unacceptable under any given circumstance." *Kolitch v. Lindedahl*, 100 N.J. 485, 493, 497 A.2d 183, 187 (1985). As is so with respect to plaintiff's prima facie case, the burden of proof with respect to unreasonableness is on the plaintiff. *See Kolitch v. Lindedahl*, 100 N.J. at 491, 497

A.2d at 187; *Fox v. Township of Parsippany–Troy–Hills*, 199 N.J.Super. 82, 488 A.2d 557 (App.Div.1985), *certif. denied*, 96 N.J. 314, 475 A.2d 602 (1985). Whether or not a public entity's actions were palpably unreasonable "is a jury question ... except in cases where reasonable men could not differ." *Polyard v. Terry*, 148 N.J.Super. 202, 218, 372 A.2d 378, 386 (Law Div.1977).

This Court finds that plaintiff has submitted enough evidence of unreasonableness on Atlantic City's part to survive summary judgment. The report of plaintiff's expert, George Widas, concludes that the city constructed the handicap ramp with excessive slopes and without appropriate safety features, such as handrails or markings for visibility. (Altieri Certif. Ex. D.) The report observes that such construction was at odds with the provisions of the New Jersey Uniform Construction Code, other industry safety standards, and engineering texts. *Id.* For example, the report found that the slopes of the ramp exceeded the 8.33 percent maximum in the Uniform Construction Code, and that industry standards dictated handrails for such slopes. *Id.* Such evidence is not conclusive; as an initial matter, the record does not make clear whether the same standards existed when the ramp was constructed. Nonetheless, the evidence does raise a credible inference that the city ignored recognized safety standards when it constructed the ramp. Accordingly, a genuine issue of fact exists as to whether the city acted in a palpably unreasonable fashion, and summary judgment based on this ground is inappropriate.

### 2. *Plan or Design Immunity*

▮▮▮▮ Atlantic City argues that even if the general immunity of N.J.S.A. 59:4–2 does not apply, it is immune under the Tort Claims Act's protections for certain design defects. The Act immunizes a public entity from liability for an injury caused "by the plan or design of public property, either in its original construction or any improvement thereto, where such plan has been approved in advance of construction" by a public employee exercising discretionary authority to give such approval. N.J.S.A. 59:4–6. In order for immunity to attach, an approved feature of the plan must sufficiently address the condition that is the subject of the plaintiff's claim. *See Manna v. State*, 129 N.J. 341, 353, 609 A.2d 757, 763 (1992); *Thompson v. Newark Housing Auth.*, 108 N.J. 525, 536–37, 531 A.2d 734, 739–40 (1987). Additionally, construction must have been undertaken in accordance with the plan. *See Leibig v. Somerville Senior Citizens Housing, Inc.*, 326 N.J.Super. 102, 108, 740 A.2d 686, 689 (1999). Plan-or-design immunity, in contrast with the Tort Claims Act's general immunity, is an affirmative defense as to which the public entity bears the burden of proof. *See Ciambrone v. State Dep't of Transp.*, 233 N.J.Super. 101, 105, 558 A.2d 47, 49 (App.Div.1989).

Atlantic City presents evidence that its built-up handicap ramps, including the one at the corner of Boston and Pacific avenues, were built according to plans issued by the city's engineer and Department of Public Works. (Sprouse Certif. Exs. 1, 2, and 3.) Additionally, an employee in the city's Engineering Office who helped devise the plans certifies that the designs for the ramps were approved by either the city engineer or the commissioner of public works. (Sprouse Certif. ¶ 6.) However, the city concedes that the ramp designs do not specify slopes for the face and sides of the ramps, ostensibly because varying on-site circumstances precluded uniform determinations as to slope. (Wieliczko Supp. Certif. Ex. P at 44, 45, 80.)

Regardless of the reason for the absence of slope guidelines in the plans, the lack of such specifications establishes a genuine of issue of fact with respect to the availability of plan-or-design immunity. It is the slope of the ramp, in conjunction with a lack of safety features, that constitutes the alleged dangerous condition. Without such specifi-

cations, the city cannot show that the ramp designs addressed the condition that is the subject of plaintiff's claim. Moreover, there also exists an issue of fact with respect to whether the plans received the requisite approval. While the plans submitted by the city appear under the heading of either "City Engineer" or "Department of Public Works," the plans are not signed in the space provided and bear no other indicia of approval. One design (Exhibit 1) indicates that it was drawn by the city engineer, but given the presence of two other sets of plans without such an indication (Exhibits 2 and 3), the Court cannot determine at this stage that the handicap ramp in question was built using approved plans. Finally, the Engineering Office employee recollected that the plans were approved, but could provide no specific evidence beyond the plans themselves. (Wieliczko Supp. Certif. Ex. P at 60, 61.) Because factual issues with respect to Atlantic City's plan-or-design immunity defense remain, summary judgment is inappropriate.

### 3. *Injury Threshold*

Finally, the Tort Claims Act contains a threshold qualification for the recovery of damages for pain and suffering against a public entity. In order to recover such damages, the claimant must suffer permanent injury or disfigurement, and his or her medical expenses must exceed $1,000. *See* N.J.S.A. 59:4-2. Atlantic City contends that plaintiff has not presented sufficient evidence of a permanent injury within the meaning of the Act.

Failure to reach the injury threshold does not bar all causes of action, but merely bars recovery for the pain and suffering component. *See Beauchamp v. Amedio,* 164 N.J. 111, 119, 751 A.2d 1047, 1051 (2000) (quoting *Montag v. Bergen Bluestone Co.,* 145 N.J.Super. 140, 149, 366 A.2d 1361, 1366 (Law Div.1976)). Because plaintiff claims damages other than damages for pain and suffering, the injury threshold would not operate to bar recovery for plaintiff against Atlantic City. The Court thus need not address at the summary judgment stage whether plaintiff's proofs of permanent injury are sufficient.

## V. CONCLUSION

For the reasons stated herein, the motion of defendants Atlantic City Hilton and GNOC Corp. will be granted. The motion of defendant City of Atlantic City will be denied. The Court will enter an appropriate order.

### ORDER ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

**THIS MATTER** having come before the Court upon defendants' motions for summary judgment;

The Court having reviewed the record and the submissions of the parties; and

For the reasons stated in the Court's opinion of this date;

**IT IS** this *9th* day of November, 2000, **HEREBY**

**ORDERED** that the motion of defendants Atlantic City Hilton and GNOC Corp. is **GRANTED;** and

**IT IS FURTHER ORDERED** that defendant City of Atlantic City's motion is **DENIED.**

No costs.