843 A.2d 1169

ARTHUR BEDELL, PLAINTIFF–APPELLANT, v. SAINT JOSEPH'S CARPENTER SOCIETY, DEFENDANT–RESPONDENT, AND CITY OF CAMDEN AND HILL INTERNATIONAL, INC., DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Submitted March 1, 2004—Decided March 19, 2004.

516

Before Judges HAVEY, FALL and PARRILLO.

*Sarubbi & Jakobowski,* attorneys for plaintiff-appellant *Arthur Bedell* (*W. James Jacobowski,* of counsel and on the brief.).

*Mintzer, Sarowitz, Zeris, Ledva & Meyers,* attorneys for defendant-respondent *Saint Joseph's Carpenter Society* (*Benjamin J. Tartaglia, III,* of counsel and on the brief.).

The opinion of the court was delivered by

PARRILLO, J.A.D.

In this trip and fall negligence case, plaintiff Arthur Bedell appeals from summary judgment dismissing his personal injury complaint against the abutting commercial property owner, defendant Saint Joseph's Carpenter Society. The primary issue centers on the liability of a commercial landowner for injuries sustained by a pedestrian on the grassy strip between the sidewalk and curb in front of its building. The motion judge took the view that defendant had no "legal duty" with respect to this area. We hold otherwise and, further, that it is for a jury to determine whether that duty was breached in this instance. Accordingly, we reverse and remand.

We recite the sparse facts disclosed by the summary judgment record, giving plaintiff the benefit of all favorable inferences therefrom. *Brill v. Guardian Life Ins. Co. of Am.*, 142 *N.J.* 520, 540, 666 *A.*2d 146 (1995). On November 19, 1999, plaintiff was on his newspaper delivery route on the 2900 block of Berkley Street in Camden. At around 5:10 a.m., after making a delivery to a residence to the rear of his parked car, plaintiff crossed the fifty-foot wide street to make another delivery. When he reached the opposite side of Berkley Street, he mounted the curb and walked along it for a few steps before turning left to cross the grassy strip separating the curb and the sidewalk approximately fifteen feet from the front of defendant's building at 2937 Berkley Street. As plaintiff crossed the grassy strip to reach the sidewalk, he tripped over the roots of a tree stump, fell, and sustained injury.

The 2900 block of Berkley Street is in an urban residential area of Camden, with row homes lining both sides of the street. An unbroken grassy strip runs parallel to the street, between the sidewalk and the curb, and there are no driveways or other gaps in the curb, grassy strip, or sidewalk. Traffic runs in both directions on Berkley Street and parking is permitted only on the side opposite defendant's property. There is no street lighting, nor any lighting provided by defendant, and it was dark at the time of the incident.

It cannot be determined from the record who cut the tree down or when it occurred. An undated photograph shows at one time a tall tree leaning towards defendant's structure from the sidewalk area. In October 1997, defendant, who also owns other buildings in the area, undertook extensive renovations to his properties which he leases to tenants.

Plaintiff brought a personal injury complaint against defendant, the City of Camden and Hill International, Inc., the construction site supervisor hired by defendant to oversee the row house rehabilitation project. All three answered and after discovery, filed motions for summary judgment. Plaintiff opposed only the relief sought by defendant and, after hearing oral argument, the trial court granted summary judgment in favor of all movants dismissing plaintiff's complaint. As to defendant, the judge reasoned that the commercial landowner had no legal duty to plaintiff to maintain the strip of land between the curb and sidewalk adjacent to its property that was neither designed nor intended for pedestrian use. Plaintiff appeals only as to the dismissal of his complaint against defendant, arguing that such a duty exists as a matter of law, and that there are genuine issues of fact as to its breach by defendant to preclude summary judgment relief.

The issue before us arises from the fact that the use of the property abutting the sidewalk and grassy strip is commercial, and that fact is undisputed. *See Restivo v. Church of Saint Joseph of the Palisades,* 306 *N.J.Super.* 456, 468, 703 *A.2d* 997 (App.Div.), *certif. denied,* 153 *N.J.* 402, 709 *A.2d* 796 (1998). In this regard, it is well settled that commercial landowners are responsible for maintaining abutting sidewalks in reasonably good condition and are liable to injured pedestrians for their negligent failure to do so. *Stewart v. 104 Wallace St., Inc.,* 87 *N.J.* 146, 157, 432 *A.2d* 881 (1981). *See also Brown v. St. Venantius School,* 111 *N.J.* 325, 327, 544 *A.2d* 842 (1988); *Dupree v. City of Clifton,* 351 *N.J.Super.* 237, 242, 798 *A.2d* 105 (App.Div.2002); *Nielsen v. Lee,* 355 *N.J.Super.* 373, 376, 810 *A.2d* 600 (App.Div.2002); *Learn v. City of Perth Amboy,* 245 *N.J.Super.* 577, 580, 586 *A.2d* 327

(App.Div.1991). The underlying rationale for the imposition of a rule of liability is "the benefits of sidewalks to abutting commercial owners" and the fact that such a rule "would serve the dual purpose of providing recourse to innocent pedestrians and an incentive to abutting commercial owners to keep their sidewalks in good repair." *Nielsen, supra,* 355 *N.J.Super.* at 376, 810 *A.*2d 600 (citing *Stewart, supra,* 87 *N.J.* at 155, 432 *A.*2d 881). Among the substantial benefits to commercial landowners is the ease of access to and from their establishments by the pedestrian public who have a right "to safe and unimpeded passage along the sidewalk. . . ." *Stewart, supra,* 87 *N.J.* at 152, 432 *A.*2d 881.

On the other hand, courts have declined to categorically extend *Stewart's* rule of liability to curbs, generally reasoning that a curb, separated from the sidewalk by a grassy strip, is more a feature of the road and is, therefore, "a significantly less immediate means of pedestrian ingress and egress to the abutting property than is a sidewalk." *Levin v. Devoe,* 221 *N.J.Super.* 61, 65, 533 *A.*2d 977 (App.Div.1987). Thus, because the primary functions of the curb in *Devoe* were to "channel surface water from the road into storm drains and to serve as a barrier for cars to park against[,]" *ibid.,* we refused to hold a commercial landowner liable for injuries suffered when a pedestrian tripped and fell on a curb in front of an apartment building as she was attempting to cross the street. *Id.* at 64, 533 *A.*2d 977. We recognized, however, that in some cases curbs may be "structurally an integral part of . . . sidewalks" for which the abutting property owner may be liable. *Ibid.* Of course, "whether a curb is deemed part of a sidewalk . . . might well depend on the context and facts in the given case." *Norris v. Borough of Leonia,* 160 *N.J.* 427, 443–44, 734 *A.*2d 762 (1999). *See also MacGrath v. Levin Properties,* 256 *N.J.Super.* 247, 252–53, 606 *A.*2d 1108 (App.Div.), *certif. denied,* 130 *N.J.* 19, 611 *A.*2d 656 (1992).

While sidewalks remain the responsibility of the adjoining commercial landowner and curbs not structurally an integral part thereof generally fall outside the scope of any legal duty, no

published opinion in this State has specifically addressed the grassy strip in between. Nevertheless, courts have confronted the liability issue in analogous contexts.

In *Chimiente v. Adam Corp.*, 221 *N.J.Super.* 580, 582–83, 535 *A.*2d 528 (App.Div.1987), the plaintiff tripped and fell while traversing a dirt pathway over a grassy slope adjacent to a shopping center parking lot, created by the public for its own convenience. We rejected the invitation to extend the *Stewart* liability rule to a third-party's land neither designed nor intended for pedestrian use where the shopping center owner provided safe passage to its parking lot through other existing entrances. 221 *N.J.Super.* at 584–85, 535 *A.*2d 528.

In *May v. Atlantic City Hilton*, 128 *F.Supp.*2d 195 (D.N.J.2000), a pedestrian was injured while attempting to cross a street outside a casino-hotel when she stepped off the curb area into the street gutter where there was a built-up handicap-access ramp. The ramp, which was designed and built by Atlantic City, occupied the gutter area and extended from the top of the curb down to street level for the entire ten-foot radius of the street corner. *Id.* at 197. The casino-hotel argued that it owed no duty to the plaintiff because the dangerous condition arose not in the sidewalk, but in the gutter area of the street. In rejecting this particular argument, the court noted that the ramp might be considered an integral part of the sidewalk for liability purposes. *Id.* at 200. The court reasoned that "[t]he fact that the ramp is adjacent to the curb rather than in the curb is not dispositive.... In this case the ramp, like a sidewalk, is used by pedestrians to move from the street to the hotel and has nothing to do with roadway functions such as channeling cars and water." *Ibid.*[1]

More recently, in *Gaskill v. Active Environmental*, 360 *N.J.Super.* 530, 536, 823 *A.*2d 878 (App.Div.2003), we extended the

---

[1] Nevertheless, the court found that the casino-hotel did not owe a duty of care to the plaintiff—who did not allege negligent maintenance—for a purported design defect it did not create. *Id.* at 200–01, 432 *A.*2d 881.

*Stewart* liability rule to the outbounds of a sidewalk. *Id.* at 533, 823 *A.*2d 878. In that case, a pedestrian was injured when she tripped and fell on a one-inch raised metal tree grate in front of property owned by a business. There was a paved surface from the buildings in the commercial district to the curb with no grassy strip between the sidewalk and the street. The township had trees planted within the outer edges of the sidewalk and grates installed around the trees. In the area where the incident occurred, the roots of the tree had grown up and pushed the grate, causing the bolt to give out and raised the grate. *Ibid.* On that record, we reversed the trial court's grant of summary judgment in favor of the commercial landowner, satisfied that the evidence presented a "debatable question as to whether the subject tree grate contained within the outbounds of the sidewalk [was] structurally an integral part of the sidewalk and [was] used as a pedestrian walkway or means of pedestrian ingress and egress to the abutting property[,]"—an issue we left for the jury to resolve. *Id.* at 536, 823 *A.*2d 878.

And most recently, the Supreme Court in *Monaco v. Hartz Mountain Corp.*, 178 *N.J.* 401, 418, 840 *A.*2d 822 (2004), extended commercial landowner liability for injuries caused by a sidewalk sign owned, maintained, installed and repaired by the city, not the defendant property owner. There, the plaintiff was employed in a building owned by the defendant and rented to the plaintiff's employer. *Id.* at 404, 840 *A.*2d 822. As the plaintiff exited the building, a gust of wind dislodged a municipal parking sign that was installed on the defendant's sidewalk. The sign became airborne and struck plaintiff in the head, causing injury. *Ibid.* It was demonstrated at trial that "even a minimally competent inspection would have revealed" that the sidewalk at the base of the sign was cracked and that the pole was bent and loose. *Id.* at 410, 840 *A.*2d 822. Nonetheless, the defendant argued that while it had a legal duty with regard to the sidewalk, it had no legal duty with regard to the sign because it did not own, install, maintain or repair it. *Ibid.* The trial court agreed and granted Hartz' motion for a directed verdict. We affirmed and the Su-

preme Court reversed, finding that Hartz owed a legal duty to plaintiff and that it was for the jury to determine whether that duty was satisfied. *Id.* at 418, 840 *A.*2d 822.

In doing so, the Court noted that the standard for imposition of a duty on commercial landowners has evolved from the common law methodology of premises liability, *Mulraney v. Auletto's Catering, Nat. Valet Parking, Inc.,* 293 *N.J.Super.* 315, 320–21, 680 *A.*2d 793 (App.Div.), *certif. denied,* 147 *N.J.* 263, 686 *A.*2d 764 (1996), to a more flexible approach based in "an abiding sense of basic fairness under all of the circumstances in light of considerations of public policy." *Hartz Mountain Corp., supra,* 178 *N.J.* at 418, 840 *A.*2d 822 (quoting *Hopkins v. Fox and Lazo Realtors,* 132 *N.J.* 426, 439, 625 *A.*2d 1110 (1993)). That inquiry, the Court explained, involves "identifying, weighing and balancing several factors [including] the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution." *Ibid.*

In determining the outer limits of a commercial landowner's liability, *Stewart* and its progeny counsel against too rigid an application of absolute rules, which appears to have been the approach taken below. Indeed, the trial court, in dismissing plaintiff's complaint, stated in conclusionary fashion that "the grassy strip [was] not meant for pedestrian use" and that defendant did "not have to maintain an area [that was] not meant for people to walk on." Such a cramped view of the governing principles, however, cannot be reconciled with either the evolving standards for imposing a legal duty, or the facts of record.

■ Here, as noted, the grassy strip in front of defendant's property runs uninterrupted and parallel to the sidewalk, separating it from the curb. Those visitors dropped off curbside have no choice but to traverse the grassy strip to reach the sidewalk and ultimately the adjoining buildings. For those exiting a car parked on the opposite side of the street, while it is conceivable, as the trial court suggests, that they may walk the length of the block to the corner, cross the street, and walk back down the sidewalk to

their destination, it is also reasonably foreseeable that they would instead cross the street conveniently and directly from where they parked their car, necessitating crossing the grassy strip to reach the sidewalk on the other side.

Given the layout of the neighborhood, it appears the grassy strip is more a feature of the sidewalk, facilitating access thereto, than the road. Certainly, there is no suggestion that its primary function is to channel surface water from the road into storm drains or to serve as a barrier for cars to park against. And it is clearly designed for a different purpose than a street. Although presumably designed primarily for ornamentation and aesthetics, the grassy strip here is also likely used by pedestrians as an immediate means of ingress and egress to the sidewalk. Indeed, such a use would be necessitated by the fact that the strip is uninterrupted, runs the entire length of the street and must be crossed by a pedestrian in order to reach the sidewalk. Under these circumstances, we deem the grassy strip as an extension of the sidewalk and "structurally an integral part" of it.

This was the same reasoning applied in *Brennan v. Cambridge*, 332 *Mass.* 613, 127 *N.E.*2d 181 (1955), although that case dealt with the liability of a municipality rather than an abutting private landowner. There, a pedestrian tripped over a tree root, which ran about a foot from the curbstone and parallel to it in a dirt triangle between the sidewalk and curbstone. *Id.* at 182. She sued the city which argued that it was not liable for a defect in the portion of the public highway "not a part of the traveled path, and not so connected with it that it would affect the safety and convenience of those traveling on the highway and using the traveled path." *Id.* at 183 (internal quotations and citation omitted). The trial court refused a jury instruction based on the defendant's theory of non-liability and was affirmed on appeal since it could not be said that the place of the accident was "not a part of the traveled path", and the plaintiff could be found to have acted reasonably in crossing where she did. *Ibid.*

A similar result was reached in *McDonald v. Frontier Lanes, Inc.*, 1 *Ill.App.*3d 345, 272 *N.E.*2d 369 (1971) with respect to an abutting commercial landowner. In that case, a customer of the defendant's bowling establishment was injured when she stepped into a twelve-inch deep, two-foot wide obscured depression in a six-foot wide city-owned "parkway" between the sidewalk and curb, used by patrons as a means of ingress and egress from the premises. The bowling establishment was separated from the parkway by a public sidewalk opposite entrance to the building. Under these circumstances, the court held the trial judge's instruction that the owner of property abutting a public sidewalk and parkway is under a duty to exercise ordinary care not to create an unsafe condition which would interfere with customary and regular use of walk and parkway was not error. *Id.* at 374.

■ Here, taking into consideration all the surrounding circumstances, it cannot be said, as a matter of law that no legal duty attaches in this instance. Nothing in the nature of this grassy patch of land would *per se* absolve defendant from liability for injuries received thereon. Indeed, as the court noted in *Hartz Mountain, supra,* "neither ownership nor control is the sole determinant of commercial landowner liability." 178 *N.J.* at 404, 840 *A.*2d 822.

Rather, the imposition of a duty of care in this case is consistent not only with the character of the unpaved plot as part of the sidewalk, but with considerations of fairness and public policy as well. *Hartz Mountain, supra,* 178 *N.J.* at 418, 840 *A.*2d 822; *Fox & Lazo Realtors, supra,* 132 *N.J.* at 439, 625 *A.*2d 1110. The right of the public to safe and unimpeded passage along the sidewalk, *Stewart, supra,* 87 *N.J.* at 152, 432 *A.*2d 881, must, of necessity, include the right to safely reach the protection of the sidewalk from an unimproved strip of land immediately adjacent to it. Considered more closely connected with the sidewalk than the roadway, the unpaved plot of land, it is reasonably anticipated, will be traversed by members of the public. Having been provided the substantial benefit of easy access to its property, it is only fair that

defendant be burdened with the duty to maintain the grassy strip in a reasonably safe condition so as not to present an unreasonable risk of harm.

As we have already pointed out, the record on this motion is sparse.[2] It does not contain a number of facts necessary to determining liability,[3] such as defendant's actual or constructive notice or knowledge of the allegedly defective condition; how long the grassy strip was in that condition; and what steps, if any, were taken by defendant. In finding that the facts of record warrant the imposition of some degree of duty and, hence, potential liability on the part of defendant, we should not be understood as having here declared defendant's liability, but only as having declared plaintiff's right to proceed and to try to prove those facts on which liability is asserted.

The summary judgment appealed from is reversed, and we remand for further proceedings.

---

[2] There is no assertion in the record, for instance, of the existence of a municipal shade tree commission established pursuant to *N.J.S.A.* 40:64-1 to - 14, nor any claim by defendant that it is shielded from liability by the vesting of exclusive control over sidewalk shade trees in any such commission. *N.J.S.A.* 40:64-55(a). Even assuming its existence, however, the statutory immunity accorded the commission by *N.J.S.A.* 40:64-14 would not absolve defendant from the duty, at least, of notifying the shade tree commission of the problem and, if the local ordinance so authorizes, seeking its permission to make the repair. *See Nielsen v. Lee, supra,* 355 *N.J.Super.* at 377, 810 *A.*2d 600.

[3] We find inapplicable to the facts of this case, as we understand them, plaintiff's alternate theory that a commercial landowner is liable for injuries suffered by a pedestrian on defective or dilapidated public property where the landowner had contributed to the dangerous condition. *See Kernor v. New Jersey Bell Telephone Co.,* 61 *N.J.* 470, 475, 295 *A.*2d 356 (1972); *Snidman v. Dorfman,* 7 *N.J.Super.* 207, 211, 72 *A.*2d 795 (App.Div.1950). There is absolutely no support in this record, at least as far as developed to date, for such a theory of liability.