**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0549-20

DANIEL J. O'BRIEN,

    Plaintiff-Appellant,

v.

NEW JERSEY TURNPIKE
AUTHORITY,

    Defendant-Respondent.

_____

Submitted December 14, 2021 – Decided January 27, 2022

Before Judges Rothstadt and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-5157-18.

Alexandra Errico, attorney for appellant.

Chiesa, Shahinian & Giantomasi, PC, attorneys for respondent (Christopher R. Paldino and Carla M. Zavala, on the brief).

PER CURIAM

Plaintiff Daniel O'Brien appeals from an October 2, 2020 order granting summary judgment to defendant the New Jersey Turnpike Authority (NJTA). Plaintiff sued the NJTA and contended he sustained multiple injuries when he lost control of his motorcycle after hitting a pothole on the New Jersey Turnpike. The court granted the NJTA's application after concluding that the motion record failed to create a genuine and material question of fact regarding the NJTA's liability under the New Jersey Tort Claims Act (TCA), N.J.S.A 59:1-1 to -12-3. We affirm.

I.

We derive the following facts from the competent evidence in the summary judgment motion record, viewed in a light most favorable to plaintiff. Brill v. Guardian Life Ins. of Am., 142 N.J. 520, 540 (1995). On July 25, 2016, at or around 11:38 a.m., plaintiff was riding his motorcycle on the New Jersey Turnpike. While approaching a toll plaza close to the Interchange Fourteen Outside Entry Roadway, he hit a pothole near a storm drain causing him to lose control of his motorcycle and slide approximately thirty-five feet. He was later hospitalized with a number of broken ribs and a collapsed lung.

The New Jersey State Police promptly arrived on the scene and completed a "crash investigation report" (police report) which included a statement from

plaintiff that he "lost control of [his] motorcycle, [when he] hit a hole on the roadway." The police report contained a diagram of the accident and the following summary of the "[i]nvestigation of the scene" which provided in relevant part that:

> [plaintiff] was traveling on the New Jersey Turnpike Interchange [Fourteen] Outside Entry Roadway. Prior to making entry through the toll plaza, [plaintiff] struck a hole in the middle of the roadway, subsequently causing [him] to lose directional control of the motorcycle and slide approximately 35 yards from the initial impact on its right side.

Finally, the report identified a "dip in the roadway, near the drain," as an apparent contributing circumstance of the accident.

At his deposition, plaintiff responded he was "not sure" when repeatedly asked how the accident occurred and instead referred to the statements contained in the police report. When pressed further by the NJTA's counsel, he claimed not to remember the incident, but then clarified that he recalled "heading into [the] toll plaza to pay the toll . . . when the bike just acted funny." When asked if he "hit any potholes," plaintiff testified that he found out "afterwards" there was a "hole in the road." Plaintiff could not recall how far he was from the toll plaza at the time of the accident, the location of the toll plaza after the motorcycle eventually stopped, or the distance from the pothole to the toll plaza.

3

Plaintiff also testified that he did not "remember hitting the [pot]hole when the bike started acting funny," and specifically stated that he did not know if he "hit [the] defect in the road before the accident" because he was focused on the toll booth. Plaintiff appeared to confirm that he had seen pictures of the roadway defect, but stated he was unaware of who took the photographs. He was unable to testify as to the depth of the pothole, and although he stated it was located in the vicinity of a sewer grate, he could not provide further details as to its location in relation to the grate.

Wayne Herring, a former NJTA Road Foreman, was also deposed.[1] He testified that he and an assistant examined roadways on a weekly basis and that crews on the road would report "anything that needs attention." Herring also stated that on the day of the accident, two workers from his department repaired a pothole with a bag of cold patch. Finally, when shown photos produced by plaintiff, Herring identified that the area depicted in the photographs was

---

[1] As detailed, infra, at p. 5-6, the NJTA submitted portions of Herring's deposition testimony in support of its summary judgment application. Plaintiff did not include any additional sections of Herring's testimony when opposing the motion, nor did he move for reconsideration of the October 2, 2020 order or seek to supplement the record. We accordingly limit our review to the record before us.

A-0549-20

Interchange Fourteen Outside Entry and that had he noticed the road defect depicted during an inspection, his department would have repaired it.

NJTA repair logs for the day of plaintiff's accident indicated that the NJTA received a report of a pothole at 12:20 p.m., and that workers filled it with sixty pounds of cold patch at 12:50 p.m. The repair logs also provided that the NJTA received no complaints of potholes in the area in the two weeks prior to the accident, and potholes had been filled at Interchange Fourteen on June 22 and 23, 2016, about a month before the accident.

As noted, the NJTA filed a motion for summary judgment accompanied by a fully compliant statement of undisputed material facts (SUMF) pursuant to Rule 4:46-2. More specifically, the NJTA's SUMF included twenty-eight separately numbered paragraphs that included statements supported by citations to the record. That record included plaintiff's complaint, the police report, the NJTA's repair logs, plaintiff's deposition transcript, excerpts from Herring's deposition transcript, and the photos produced by plaintiff.

The SUMF largely recounted plaintiff's and Herring's testimony and the information from the NJTA's repair logs. It also stated "[t]he NJTA had no actual or constructive notice of the existence of the defect," "[n]o evidence has been produced to show that the alleged pothole existed for such an extended

period of time and was of such an obvious nature that the NJTA should have discovered the condition and its dangerous character," and "[p]laintiff has presented no evidence of any kind that the NJTA's actions or alleged failures to protect against the dangerous condition were palpably unreasonable."

For reasons unexplained by the record, plaintiff failed to submit opposition to the NJTA's SUMF as required by Rule 4:46-2(b). Instead, as best we can discern from the record, he relied on the materials submitted by the NJTA, including plaintiff's deposition testimony and the unauthenticated photographs shown to Herring at his deposition.

On October 2, 2020, after hearing oral arguments, the motion judge issued an order and written opinion granting the NJTA's motion. He first explained plaintiff did not dispute the NJTA's SUMF under Rule 4:46-2(b) and such a failure "constitute[d] an admission of all the material facts [the NJTA] included in its [SUMF]." He reasoned that plaintiff's "potentially fatal misstep," "work[ed] a grave harm to his opposition because it in essence concede[d] facts that undermine[d], if not eviscerate[d], any argument that the elements of his cause of action [were] present on [the] record." Despite finding that plaintiff's failure to dispute the NJTA's SUMF "arguably end[ed] the need for extensive

6

further analysis," the judge nevertheless addressed the substance of plaintiff's opposition.

On the merits, the judge determined plaintiff failed to establish the existence of a factual question that the alleged defect in the roadway constituted a dangerous condition reasoning that "there is simply no quantifiable, objective evidence describing or supporting the existence of the alleged defect." In so concluding, he found that "[t]he only supposedly objective evidence are photographs produced by plaintiff that were never authenticated," and as such they were "not competent evidence of the location of [p]laintiff's accident, no less the specific condition defect that allegedly caused his accident."

The judge further explained that plaintiff could not say where, when, or by whom the photos were taken, could not "provide a meaningful description of the supposed defect," and "did not see [the alleged defect] before his accident." He stated that "other than what the plaintiff himself saw in the photographs, it is clear from plaintiff's deposition that he never saw the supposed condition which caused his accident."

The judge also addressed the evidentiary value of the police report, concluding that it was not "competent evidence because it is hearsay when offered by the plaintiff for the truth of the matter asserted." He explained that

7

"[t]he State Trooper who drafted the report was not deposed" and that "the report is not a first-hand account of what the State Trooper observed but more likely was [what] he was told or surmised." The judge also noted "[t]he record lacks any explanation of what he meant by 'dip in the roadway.'" As such, he found that "[w]hile the report itself may be evidentiary, hearsay statements within it are not." The judge therefore concluded, relying in part on Polzo v. County of Essex, 209 N.J. 51 (2012), that "[p]laintiff's bare and unsupported allegation that there was a 'hole' in the roadway, without more, is plainly insufficient to carry his burden of proving a 'dangerous condition' under the TCA."

The judge next determined that plaintiff failed to establish that the alleged defect proximately caused his accident. He reasoned that "[p]laintiff doesn't know if he in fact encountered the hole that is supposedly the dangerous condition that caused his accident," based on his testimony that he did not remember seeing or hitting a defect in the road.

The judge also concluded that the NJTA lacked actual or constructive notice of the alleged defect. First, he found that repairs conducted in "the general vicinity of plaintiff's accident" a month prior to the accident had no bearing on the NJTA's constructive notice of roadway defects existing the time of the accident. Second, the judge noted that Herring's testimony and the NJTA's

8

repair logs "indicate[d] that NJTA did not receive any reports of a pothole on Interchange [Fourteen] for the two weeks immediately preceding the accident."

Further, despite stating it was a "closer call," the judge found that the July 25, 2016 pothole repair did not constitute evidence of constructive notice because of the "lack of any evidence at all that the pothole then repaired was the one plaintiff encountered or the one in the cited photographs." He explained that plaintiff did not "establish that it was the condition at issue and, even if it was, that it 'existed for such a time and was of such a dangerous nature that the public entity in exercising due care, should have discovered the condition and its dangerous character.'"

Finally, the judge found that the NJTA's actions were not palpably unreasonable. He first explained that "[a]lthough the question of palpably unreasonable conduct is ordinarily one of fact, our courts will grant summary judgment on this ground where the record is devoid of sufficient factual support to allow the question to go before the jury." Finding that the NJTA was not on notice of the accident and plaintiff failed to provide evidence such as prior accidents or complaints, the judge determined that plaintiff "presented insufficient evidence to establish that the NJTA's actions or failures to protect against the dangerous condition were palpably unreasonable."

9

This appeal followed in which plaintiff repeats many of the arguments he made before the motion judge. Specifically, he first argues the judge erred in determining plaintiff's failure to dispute the facts contained in the NJTA's SUMF constituted an admission under Rule 4:46-2(b), claiming the judge failed to evaluate whether the alleged facts were "sufficiently supported," and that his opposition to the motion essentially disputed the NJTA's SUMF.

Second, he claims the judge erroneously determined the contents of the police report were inadmissible hearsay and the photos alleged to depict the road defect were unauthenticated. Finally, he argues the evidence in the record created an issue of fact regarding each element required to establish liability under N.J.S.A. 59:4-2.

## II.

We "review[] de novo the . . . entry of summary judgment," Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 115 (2014), applying "the same standard as the trial court," Conley v. Guerrero, 228 N.J. 339, 346 (2017). Summary judgment is appropriate if the record demonstrates there is "no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c); Ben Elazar v. Macrietta Cleaners, Inc., 230 N.J. 123, 135 (2017). When determining whether there is a

genuine issue of material fact, we must consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill, 142 N.J. at 540.

If no genuine issue of material fact exists, the inquiry turns to "whether the trial court correctly interpreted the law." DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Massachi v. AHL Servs., Inc., 396 N.J. Super. 486, 494 (App. Div. 2007)). We owe no deference to the trial court's legal analysis or conclusions. The Palisades At Fort Lee Condo. Ass'n, Inc. v. 100 Old Palisade, LLC, 230 N.J. 427, 442 (2017).

"When . . . a trial court is 'confronted with an evidence determination precedent to ruling on a summary judgment motion,' it 'squarely must address the evidence decision first.'" Townsend v. Pierre, 221 N.J. 36, 53 (2015) (quoting Estate of Hanges v. Metro. Prop. & Cas. Ins., 202 N.J. 369, 384-85 (2010)). Our review of a trial court's disposition on a summary judgment motion "proceeds in the same sequence, with the evidentiary issue resolved first, followed by the summary judgment determination of the trial court." Ibid. "[T]he decision to admit or exclude evidence is one firmly entrusted to the trial

court's discretion." Estate of Hanges, 202 N.J. at 383-84. Therefore, we review a trial court's "[e]videntiary decisions . . . under [an] abuse of discretion standard." Id. at 383 (applying a de novo review to the greater issue of the trial court's decision on a motion for judgment only after applying the more deferential abuse of discretion standard to an evidentiary ruling).

Public entity liability is restricted under the TCA. See Polzo, 209 N.J. at 55. Generally, a public entity is "immune from tort liability unless there is a specific statutory provision imposing liability." Kahrar v. Borough of Wallington, 171 N.J. 3, 10 (2012) (citing Collins v. Union Cty. Jail, 150 N.J. 407, 413 (1997)); see also N.J.S.A. 59:1-2, 2-1. Accordingly, "immunity for public entities is the general rule and liability is the exception." Kemp by Wright v. State, 147 N.J. 294, 299 (1997); accord D.D. v. Univ. of Med. & Dentistry of N.J., 213 N.J. 130, 134 (2013) (describing that rule as the "guiding principle" of the TCA (quoting Coyne v. State Dep't of Transp., 182 N.J. 481, 488 (2005)).

Under the TCA:

> A public entity is liable for injury caused by a condition of its property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:

a. a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or

b. a public entity had actual or constructive notice of the dangerous condition under section 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.

Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable.

[N.J.S.A. 59:4-2.]

Thus, in order to succeed on a claim against a public entity, a plaintiff must prove: 1) the public property was in a dangerous condition; 2) "the dangerous condition created a [substantial and] foreseeable risk of, and actually caused, injury to plaintiff;" 3) the public entity knew of the dangerous condition; and 4) the public entity's action to protect against the dangerous condition was palpably unreasonable. Muhammad v. N.J. Transit, 176 N.J. 185, 194 (2003). Plaintiff's obligation to demonstrate these elements is a "heavy burden." Foster v. Newark Hous. Auth., 389 N.J. Super. 60, 65-66 (App. Div. 2006).

We have considered plaintiff's contentions in light of our de novo review of the record and the applicable legal principles and conclude they are without

merit. We agree that summary judgment was appropriate because plaintiff did not establish that the pothole was a dangerous condition, and even assuming the motion record created a factual question on that issue, there was no support for plaintiff's contention that the NJTA had actual or constructive notice, or that its actions were palpably unreasonable. In light of our decision, we do not address the motion judge's conclusion that the motion record also failed to establish a genuine and material question of fact as to proximate cause.

## III.

We first address, and reject, plaintiff's contention that the judge erred when he concluded plaintiff's failure to dispute the NJTA's SUMF constituted an admission of the facts asserted by the NJTA.

Rule 4:46-2 clearly requires that a motion for summary judgment be supported by a statement of material facts which "cit[es] to the portion of the motion record establishing [each] fact or demonstrating that [each fact] is uncontroverted." R. 4:46-2(a). "[A] party opposing a motion for summary judgment [must] 'file a responding statement either admitting or disputing each of the facts in the movant's statement.'" Claypotch v. Heller, Inc., 360 N.J. Super. 472, 488 (App. Div. 2003) (quoting R. 4:46-2(b)). "[A]ll material facts in the movant's statement which are sufficiently supported will be deemed

14

admitted for purposes of the motion only, unless specifically disputed by citation conforming to the requirements of paragraph (a) demonstrating the existence of a genuine issue as to the fact."  R. 4:46-2(b).

Here, we conclude that the NJTA fully complied with Rule 4:46-2(a) when it supported its summary judgment record with a fully compliant SUMF.  At that point, plaintiff's obligations as mandated by Rule 4:46-2(b) were simple and clear — he was obligated to "file a responding statement either admitting or disputing each of the facts in the movant's statement."  In addition, plaintiff also was obligated, as appropriate, to include in the responding statement "in separately numbered paragraphs together with citations to the motion record," "additional facts" that he contended were "material and as to which there exists a genuine issue."  Absent such compliance, the Rule permits trial courts to do precisely what the motion judge did here — deem each sufficiently supported statement admitted.

In light of plaintiff's burden to prove each element of his TCA claim, we agree with the judge that his failure to dispute the SUMF was a "fatal misstep," because it "in essence concede[d] facts that undermine[d], if not eviscerate[d] any argument that the elements of his cause of action [were] present on this record."  By way of example, the NJTA's SUMF included supported facts,

15

namely Herring's deposition and the NJTA repair logs, to support its contention that it was not on actual or constructive notice of the alleged defect and its conduct was not palpably unreasonable.

Plaintiff also failed to include any additional materials that it contends the judge should have considered, such as additional portions of Herring's deposition. As such, we find no error in the judge's conclusion that plaintiff's failure to properly oppose the NJTA's summary judgment motion was a significant procedural error. In any event, for purposes of completeness, we nevertheless address plaintiff's arguments on the merits, as did the motion judge, and conclude they are without merit, albeit for slightly different reasons.

IV.

We agree, in part, with plaintiff's challenges to the judge's evidentiary rulings. Specifically, plaintiff argues the contents of the police report were admissible as exceptions to the rule against hearsay, N.J.R.E. 802, as a record of a regularly conducted activity, N.J.R.E. 803(c)(6),[2] and a public record,

---

[2] N.J.R.E. 803(c)(6), Records of Regularly Conducted Activities provides:

> A statement contained in a writing or other record of acts, events, conditions, and, subject to Rule 808, opinions or diagnoses, made at or near the time of observation by a person with actual knowledge or from

A-0549-20

N.J.R.E. 803(c)(8).[3] Second, he contends the photos of the alleged defect were admissible because they were authenticated by "the totality of the evidence before the court." We agree with plaintiff that certain of the statements in the police report constituted admissible hearsay, but disagree that the judge erred in excluding consideration of the photographs as evidential to the alleged dangerous condition as they were not properly authenticated.

As to the police report, it is well settled that a police report is generally "admissible as a record of a regularly conducted activity, commonly known as a business record, N.J.R.E. 803(c)(6), and as a public record, N.J.R.E.

information supplied by such a person, if the writing or other record was made in the regular course of business and it was the regular practice of that business to make such writing or other record.

[3] N.J.R.E. 803(c)(8), Public Records, Reports, and Findings provides:

(A) a statement contained in a writing or other record made by a public official of an act done by the official or an act, condition, or event observed by the official if it was within the scope of the official's duty either to perform the act reported or to observe the act, condition, or event reported and to make the written statement; or
(B) statistical findings of a public official based upon a report of or an investigation of acts, conditions, or events, if it was within the scope of the official's duty to make such statistical findings.

803(c)(8)." Manata v. Pereira, 436 N.J. Super. 330, 345 (App. Div. 2014). Such reports may be admissible to show, for example, a person spoke to an officer, ibid., or that a report of a crime was made and the time of the report, State v. Lungsford, 167 N.J. Super. 296, 310 (App. Div. 1979). If a proponent seeks to admit the report to prove the truth of a declarant's statement contained in the document, however, the declarant's statement is embedded hearsay and requires a separate hearsay exception for that statement to be admissible evidence. See N.J.R.E. 805; Manata, 436 N.J. Super. at 345; Konop v. Rosen, 425 N.J. Super. 391, 402-03 (App. Div. 2012).

Here, we conclude that it was erroneous for the judge to conclude that the entire police report consisted inadmissible hearsay. Indeed, the report was the result of the State Trooper's investigation and contained the State Trooper's percipient observations including that there was a "dip in the roadway, near the drain." See, e.g., Brown v. Mortimer, 100 N.J. Super. 395, 405-06 (App. Div. 1968) (finding a diagram of an automobile accident contained in a police report admissible as a business record where the diagram was based on an officer's observation of skid marks and the position of vehicles after the accident). However, the judge's error in excluding the entire report from his summary judgment calculus has no effect on our decision as the information in the report,

at best, addressed the proximate cause issue. The report, individually, and in context of the other competent evidence in the motion record, does not establish the existence of a dangerous condition, that the NJTA had actual or constructive notice, or that it acted in a palpably unreasonable manner.

We agree with the judge's decision, however, with respect to the photographs shown to Herring at his deposition. As he correctly concluded, the photographs that purported to depict the pothole were unauthenticated and, therefore, inadmissible.

The admissibility of a photograph rests upon whether it fairly and accurately depicts what it purports to represent. See N.J.R.E. 901. Any witness with knowledge of the facts represented by the photograph may establish the necessary foundation to authenticate a photograph. State v. Wilson, 135 N.J. 4, 14 (1994). Consistent with N.J.R.E. 901, the witness must establish first that "the photograph is an accurate reproduction of what it purports to represent" and second "that the reproduction is of the scene at the time of the incident in question, or, in the alternative, the scene has not changed between the time of the incident in question and the time of the taking of the photograph." Id. at 15.

Here, while Herring testified that the photos depicted Interchange Fourteen, nothing in the record indicated that the photos were of the alleged

defect in question at the time of the accident. Further, the record does not establish when, by whom, or under what circumstances the photos were taken. In fact, the motion record revealed that the NJTA repaired a pothole on Interchange Fourteen approximately one hour after plaintiff's accident, undermining any claim, without a proper foundation, that the photographs accurately depicted the pothole at the time of plaintiff's accident.

V.

Finally, plaintiff argues that the record established genuine and material factual issues regarding each element required to establish liability under the TCA. We disagree that plaintiff established an issue of fact regarding whether the road was in a dangerous condition, whether the NJTA was on notice of the alleged dangerous condition, and whether the NJTA acted in a palpably unreasonable manner. As such, and as noted, we need not reach the issue of whether the alleged dangerous condition proximately caused plaintiff's injury.

A.    Dangerous Condition

We agree with the judge that the motion record failed to create a genuine dispute that the pothole constituted a dangerous condition. A "[d]angerous condition" is a defined term and "means a condition of property that creates a substantial risk of injury when such property is used with due care in a manner

A-0549-20

in which it is reasonably foreseeable that it will be used." N.J.S.A. 59:4-1(a). A "'substantial risk' . . . is not minor, trivial, or insignificant." Polyard v. Terry, 160 N.J. Super. 497, 509 (App. Div. 1978). In Polzo, our Supreme Court explained that "not every defect in a highway, even if caused by negligent maintenance, is actionable," 209 N.J. at 64 (quoting Polyard, 160 N.J. Super. at 508), and further noted that testimony that a "depression would have been repaired if the [public entity] 'had knowledge of it' does not mean . . . that the depression represented a dangerous condition of property within the meaning of the TCA." Id. at 73-74.

As the judge correctly determined, neither the police report nor plaintiff's or Herring's testimony provide any details about the size of the pothole or when it was created. Nor do the photographs illuminate that issue because, as noted, they are unauthenticated without the necessary foundation to establish when, and under what circumstances, the photographs were taken. Finally, even the statement in the police report that there was "a dip in the roadway" does not establish that the "dip" constituted a dangerous condition.

B.     Actual or Constructive Notice

Plaintiff's argument that the NJTA was on actual or constructive notice of the pothole as a dangerous condition is equally unavailing. Specifically, he

21

asserts that because the NJTA repaired potholes on Interchange Fourteen approximately one month before plaintiff's accident and examined the road at least once a week, a factual issue existed as to whether they "should have discovered an obviously dangerous condition prior to the accident."

"A public entity shall be deemed to have actual notice of a dangerous condition . . . if it had actual knowledge of the existence of the condition and knew or should have known of its dangerous character." N.J.S.A. 59:4-3(a). "A public entity shall be deemed to have constructive notice of a dangerous condition . . . only if the plaintiff establishes that the condition had existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character." N.J.S.A. 59:4-3(b).

"The mere '[e]xistence of an alleged dangerous condition is not constructive notice of it.'" Arroyo v. Durling Realty, LLC, 433 N.J. Super. 238, 243 (App. Div. 2013) (alteration in original) (quoting Sims v. City of Newark, 244 N.J. Super. 32, 42 (Law Div. 1990)). "Whether a public entity is on actual or constructive notice of a dangerous condition is measured by the standards set forth in N.J.S.A. 59:4-3(a) and (b), not by whether [for example] 'a routine

inspection program' by the [public entity] . . . would have discovered the condition." Polzo, 209 N.J. at 68.

First, the record contains no evidence that the NJTA was on actual notice of the alleged defect. Second, as to constructive notice, we are satisfied that the record and any reasonable inferences to be drawn therefrom failed to create a genuine and material question of fact on that issue as well. Indeed, the record is devoid of evidence of prior incidents related to the pothole that caused plaintiff's accident, nor does the record establish, directly or inferentially, that the NJTA was aware of any issue with respect to the pothole based on complaints from third parties. Moreover, plaintiff failed to establish that the dangerous condition "existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character." See N.J.S.A. 59:4-3(b); Polzo, 209 N.J. at 67-68 ("If failing to discover a dangerous defect in public property were the equivalent of creating the defect, the Legislature would have had no need to provide for liability based on actual or constructive notice.").

Further, and as aptly explained by the judge, the fact that the NJTA repaired potholes in the general area of plaintiff's accident approximately one month prior in no way suggests that they were on notice of a defect at the time

of the accident. Rather, Herring's testimony and the NJTA repair logs indicated that the NJTA received no complaints of potholes on Interchange Fourteen for at least two weeks prior to plaintiff's accident. Finally, the fact that the NJTA regularly examined the roadway in question does not establish constructive notice when the record is devoid of any competent evidence of the size or age of the alleged defect.

### C. Palpable Unreasonableness

Finally, plaintiff's arguments that the NJTA acted in a palpably unreasonable manner are also unpersuasive. Specifically, he claims "the evidence submitted to the lower [c]ourt . . . created an issue of fact with regard to whether the failure to repair the defect was palpably unreasonable." Second, plaintiff contends that because the NJTA asserted a "resource allocation immunity" affirmative defense under N.J.S.A. 59:2-3(d),[4] it bore the burden of

---

[4] N.J.S.A. 59:2-3(d) provides:

> A public entity is not liable for the exercise of discretion when, in the face of competing demands, it determines whether and how to utilize or apply existing resources, including those allocated for equipment, facilities and personnel unless a court concludes that the determination of the public entity was palpably unreasonable. Nothing in this section shall exonerate a public entity for negligence arising out of acts or

proving its conduct was not palpably unreasonable, pursuant to Fox v. Parsippany-Troy-Hills Twp., 199 N.J. Super. 82, 91 (App. Div. 1985).

The term "palpably unreasonable" implies "behavior that is patently unacceptable under any given circumstance." Muhammad, 176 N.J. at 195; see also Ogborne v. Mercer Cemetery Corp., 197 N.J. 448, 459 (2009) (to constitute palpably unreasonable conduct, "it must be manifest and obvious that no prudent person would approve of [the] course of action or inaction" (quoting Kolitch v. Lindedahl, 100 N.J. 485, 493 (1985))). Further, palpably unreasonable conduct "implies a more obvious and manifest breach of duty" than negligence and "imposes a more onerous burden on the plaintiff." Williams v. Town of Phillipsburg, 171 N.J. Super. 278, 286 (App. Div. 1979).

Whether a public entity's behavior was palpably unreasonable is generally a question of fact for the jury. See Vincitore v. N.J. Sports & Exposition Auth., 169 N.J. 119, 130 (2001). However, a determination of palpable unreasonableness, "like any other fact question before a jury, is subject to the court's assessment whether it can reasonably be made under the evidence presented." Maslo v. City of Jersey City, 346 N.J. Super. 346, 351 (App. Div.

---

omissions of its employees in carrying out their ministerial functions.

A-0549-20

2002) (quoting Black v. Borough of Atl. Highlands, 263 N.J. Super. 445, 452 (App. Div. 1993)).  Accordingly, "the question of palpable unreasonableness may be decided by the court as a matter of law in appropriate cases."  Id. at 350 (citing Garrison v. Twp. of Middletown, 154 N.J. 282, 311 (1998)).

Here, the record is barren of proof directly or circumstantially supporting the claim that the NJTA acted in a palpably unreasonable manner regarding the discovery or repair of this particular pothole or dangerous condition, the procedure in which the NJTA investigated such incidents, or how it responded to plaintiff's accident.  Nor did plaintiff's proofs contain evidence suggesting a history of accidents or complaints.  See Carroll v. New Jersey Transit, 366 N.J. Super. 380, 390-91 (App. Div. 2004) (holding "plaintiff's claims of palpable unreasonableness presented no jury question" where "the record [was] devoid of any evidence of a history of similar incidents or complaints, or a demonstrable pattern of conduct or practice").

Plaintiff's claim that the burden of palpably unreasonableness should have been placed on the NJTA due to its assertion of a resource allocation immunity defense is also unavailing.  First, it does not appear that plaintiff raised this argument below, as it was not discussed at oral argument or in the judge's written decision, in which he described plaintiff's argument as merely "falling back on

a generalized dispute of fact argument" and we could therefore decline to address the argument. See State v. Robinson, 200 N.J. 1, 18-20 (2009).

In any event, we find plaintiff's reliance on Fox unpersuasive. In Fox, the court concluded "that the burden of proof [regarding palpably unreasonable conduct should] be placed on the public entity only where the resource allocation immunity afforded by N.J.S.A. 59:2–3(d) is raised as an affirmative defense." 199 N.J. Super. at 91.

We find Fox unavailing here for three reasons. First, the judge did not rely on the NJTA's resource allocation defense in granting summary judgment. Second, we rejected the Fox approach in Lopez v. City of Elizabeth, 245 N.J. Super. 153, 161-63 (App. Div. 1991), where we held that when a public entity asserts a resource allocation immunity defense "plaintiff retains the burden of proving that defendant's conduct was palpably unreasonable." Finally, even if the burden of proof should have been placed on the NJTA, we are satisfied that they carried that burden.

Considering our decision that plaintiff failed to establish the existence of a dangerous condition, that the NJTA had either actual or constructive notice of the alleged dangerous condition, or that its actions were palpably unreasonable, we need not reach the judge's determination that plaintiff's proofs also failed to

create a genuine and material question of fact that the alleged dangerous condition was the proximate cause of plaintiff's accident.

Finally, to the extent we have not addressed any of the parties' remaining arguments it is because we have determined that they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0549-20